## WOODRUFF v. H. B. CLAFLIN CO.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1909.)

1. EXECUTORS AND ADMINISTRATORS (§ 410*) — INSOLVENT ESTATES — DECLARATION OF INSOLVENCY—REMEDY OF SURETY ON BOND.

The remedy of the surety of an administratrix, not made a party to a proceeding by her for an accounting, is by an application to open and amend the decree rendered in the proceeding adjudging the insolvency of the estate and determining the per cent. which the estate is able to pay to the creditors.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1617; Dec. Dig. § 410.*]

2. EXECUTORS AND ADMINISTRATORS (§ 410*)—INSOLVENT ESTATES—DECLARATION OF INSOLVENCY—REMEDY OF SURETY ON BOND.

The failure to make the surety of the administratrix a party to a proceeding by her for an accounting authorizes the surrogate in his discretion to entertain the application of the surety to open and amend the decree adjudging the insolvency of the estate and determining the percentage which it is able to pay on its indebtedness, which proceeding is an independent one, and not a mere step in the accounting.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1716–1719; Dec. Dig. § 410.*]

3. EXECUTORS AND ADMINISTRATORS (§ 418*)—INSOLVENT ESTATES—ADMINISTRATRIX'S ACCOUNTS—JURISDICTION OF COURT.

The Surrogate's Court, entertaining the application of the surety of an administratrix to open and amend the decree in a proceeding by her for an accounting to which he was not a party, acquires jurisdiction over·

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the subject-matter and of a creditor of the estate cited to appear and show cause why the decree should not be opened and amended by reducing the percentage which it is adjudged the insolvent estate is able to pay to the creditors, and a subsequent decree determining such percentage is binding on the creditor, though he did not appear, and he cannot collaterally attack it.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1658, 1659; Dec. Dig. § 418.*]

**4. EXECUTORS AND ADMINISTRATORS (§ 416*) — INSOLVENT ESTATES — OVERPAYMENT OF CLAIMS—RECOVERY.**

An administratrix, believing that the estate was solvent, compromised with a creditor by paying him a part of his claim. She offered to compromise. The creditor knew that the money he received belonged to the estate, which was insolvent, and in consequence thereof the creditor received more than he could have received on sharing pro rata with the other creditors. *Held*, that the administratrix was entitled to recover the overpayment.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1654; Dec. Dig. § 416.*]

**5. TRUSTS (§ 249*)—RECOVERY OF PROPERTY OF ESTATE.**

A trustee, who inadvertently parts with property of the trust, may reclaim it, or the value thereof, by action.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 355; Dec. Dig. § 249.*]

Appeal from Trial Term, Monroe County.

Action by Mary M. Cooke Woodruff, administratrix of Jason G. Cooke, deceased, against the H. B. Claflin Company. From a judgment for plaintiff, entered on the verdict of a jury directed by the court, and from an order denying a motion to set aside the verdict and for a new trial on the minutes of the court, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Percival De Witt Oviatt, for appellant.

Hugh J. O'Brien, for respondent.

ROBSON, J. Jason G. Cooke died in Potsdam, N. Y., on December 23, 1899, intestate. Letters of administration on his estate were issued by Surrogate's Court of St. Lawrence county on January 2, 1900, to Mary M. Cooke, widow of intestate, who later became Mary M. Cooke Woodruff. The United States Fidelity & Guaranty Company was the surety upon this administratrix's bond. At the date of his death intestate was conducting two stores, one at Potsdam and one at Piercefield. His personal assets, consisting principally of merchandise in and accounts for sales from these stores, were appraised after his decease at about $32,000. The administratrix continued to run these stores for a considerable period after her husband's death. This venture resulted in a loss. At his decease intestate was indebted to the H. B. Claflin Company on account in the sum of $725.95. In May, 1900, the administratrix compromised and canceled this debt by a payment of $700 to that company, which payment was made by a check drawn by the administratrix to the order of the creditor on the

Citizens' National Bank of Potsdam for that amount ("Bal. Acct. of J. G. C. Est."), and was paid by said bank on June 4, 1900. This compromise was the result of a voluntary offer of that sum, made by said administratrix to an agent of the company; but this offer was preceded by a persistent pressure on the part of the creditor for payment, with threats of a suit if the administratrix should not yield to the demand. All this occurred within six months after intestate's death, and before the condition of this somewhat complicated estate could well be known.

In 1902 the administratrix had an accounting in Surrogate's Court, which proceeding, through the medium of a reference, reached a decree in October of the following year. By this decree it was adjudged in effect that the Cooke estate was insolvent at the outset and was then capable of paying only about 74 per cent. of its indebtedness. Neither the surety nor the Claflin Company was made a party to that accounting. In July, 1904, this surety applied to said Surrogate's Court by petition, asking to have said decree opened and amended, in pursuance of which petition a citation was issued and was served on persons shown to have been interested in said estate, including the Claflin Company, which citation required them to appear and show cause why said decree should not be opened and amended. Whatever the reason was, that company did not appear in this proceeding for opening the decree, but ignored the invitation altogether; and the proceeding resulted in the new decree of December, 1905, based, like the former one, mainly on the referee's report, and adjudging that 71.84 per cent. of their respective claims was the amount which unsecured creditors of the estate should have received. It was further adjudged by this amended decree that the administratrix, personally, was insolvent, and that the assets of said estate remaining in her hands were sufficient to satisfy only a trifling fraction of the unpaid debts of the intestate still outstanding.

Under the authorities it can hardly be questioned that this application by the surety to have the original decree opened was an independent proceeding, so far, and not a mere step in the accounting itself. It was the only course open to the surety; for the surety was not directly a party to the accounting and could not appeal from the decree. The surety should have been cited at the outset. This failure to make the surety a party was a sufficient cause, in the discretion of the surrogate, to entertain said application. Having entertained it, and having thereupon brought the appellant into the proceeding by citation, the Surrogate's Court acquired jurisdiction over both the subject-matter and the appellant, and its subsequent decree was binding upon the appellant.

A part of the relief sought by the surety in its petition for opening the original decree was a reduction of the percentage which that decree had adjudged the estate could have paid. This was a subject which the appellant had opportunity to investigate and litigate when it was cited to the proceeding for opening the decree; and it was a matter which bore directly upon the amount of liability which the surety had incurred through maladministration of the estate. The opportunity so given was disregarded by the appellant.

Much comment has been made in its behalf upon the fact that. the administratrix's account, as filed, showed funds of her own to have been mingled, in a way, with funds of the estate in continuance of intestate's business, in payment of his debts, etc. But the referee, to whom the account was sent for adjustment, seems to have eliminated entirely, by his report, any such mingling of funds, and to have reported only as to assets belonging strictly to the estate, and to have disallowed any distribution made therefrom to next of kin or for debts. created after intestate's death. It is easy to surmise, from the brief outline of the accounting given, that it might have been conducted to a different result, if the appellant had chosen to use its opportunity. Criticism of that proceeding is not now available.

The amended decree stands, and cannot be questioned collaterally, and is binding upon the appellant. It determines, in effect, that only 71.84 per cent. of the debt which intestate, at his death, owed the Claflin Company could properly have been paid to this creditor by the administratrix. This percentage entitled the appellant to receive $521.-52, instead of the $700 it did receive, and the action resulting in the judgment appealed from was for the excess of $178.48.

The single and serious question on this appeal then is: Can an administratrix maintain such action under the circumstances stated? That question warrants an affirmative answer. The fact that appellant's claim was compromised upon the offer which came from the administratrix counts for little. She represented the estate. She made the payment with estate funds, believing the estate was solvent. The appellant knew they were estate funds, for the check used in the payment plainly indicated that fact. Its method of constraining payment was untimely and unwarranted. Whatever mistake or negligence in the transaction may be imputed to the administratrix, the estate ought not to suffer. The transaction concerned, not these two alone, but all other persons interested in the estate beneficially, and the surety also. A private compact between the two could not legally affect the rest, when made to their detriment. This overpaid creditor had no equitable right to retain the excess received above its pro rata share of assets. No wrong is done to the appellant by compelling a surrender of this excess.

The fact is noted that there is no special statute in this state authorizing suit for its recovery. Other states seem to have met such condition by legislation. It is conceded, also, that no reported case in this state is available, presenting parallel facts, and bearing directly on the question of the right to maintain such action. Neither special statute nor exact precedent should be considered indispensable in determining that question. The general principle, underlying the cited case of Wetmore v. Porter, 92 N. Y. 76, applies in this appeal—that a trustee who has inadvertently parted with property belonging to the trust can reclaim the property, or the value thereof, by action.

Judgment and order affirmed, with costs. All concur.